In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3964

GEORGE H. RYAN SR.,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 5512—**Rebecca R. Pallmeyer**, *Judge*.

ARGUED MAY 31, 2011—DECIDED JULY 6, 2011

Before EASTERBROOK, *Chief Judge*, and WOOD and
TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. George Ryan, a former
Governor of Illinois, is in federal prison following his
convictions for racketeering, mail fraud, tax evasion,
and lying to the FBI. The mail-fraud charge alleged that
Ryan defrauded Illinois of its intangible right to his
honest services by covertly acting in the interests of
some private supporters rather than as a fiduciary for

the state's citizens. Ryan's convictions and sentences were affirmed on appeal. *United States v. Warner*, 498 F.3d 666, rehearing en banc denied, 506 F.3d 517 (7th Cir. 2007) (Posner, Kanne & Williams, JJ., dissenting), stay of mandate denied, 507 F.3d 508 (2007) (Wood, J., in chambers; Kanne, J., dissenting), cert. denied, 553 U.S. 1064 (2008).

After the Supreme Court held in *Skilling v. United States*, 130 S. Ct. 2896 (2010), that the honest-services form of the mail-fraud offense, see 18 U.S.C. §1346, covers only bribery and kickback schemes, Ryan began a collateral attack under 28 U.S.C. §2255. He contended that the jury instructions were defective because they permitted the jury to convict him on an honest-services theory without finding a bribe or a kickback, and he challenged several evidentiary rulings that had been influenced by this circuit's pre-*Skilling* understanding of §1346. Asserting that the errors could not be shown to be harmless under the standard used on direct appeal, Ryan asked for a new trial. The district court concluded that the errors are harmless under that standard and denied Ryan's petition. 2010 U.S. Dist. LEXIS 134912 (N.D. Ill. Dec. 21, 2010). He has appealed.

A collateral attack is timely if filed within one year from the date on which the judgment became final. See 28 U.S.C. §2255(f). Ryan took more than two. But §2255(f)(3) restarts the time when a "right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review". The prosecutor conceded in the district court that *Skilling* meets that standard. The Justices did not say in *Skilling*, a

case on direct appeal, whether their decision applies retroactively on collateral review, but *Fischer v. United States*, 285 F.3d 596 (7th Cir. 2002), and *Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001), hold that a district court or court of appeals may make the retroactivity decision under §2253(f)(3). The language of that subsection differs from 28 U.S.C. §2244(b)(2)(A), under which a second or successive collateral attack may be authorized only when "the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review *by the Supreme Court*, that was previously unavailable" (emphasis added). See *Tyler v. Cain*, 533 U.S. 656 (2001). Because the United States has waived any limitations defense to Ryan's position, we need not decide whether *Skilling* applies retroactively on collateral review, though *Davis v. United States*, 417 U.S. 333 (1974), and *Bousley v. United States*, 523 U.S. 614 (1998), imply an affirmative answer. (We discuss *Davis* and *Bousley* in more detail later.)

Although the prosecutor's concession takes §2255(f) out of the case, this remains a collateral attack, and the arguments available on collateral review differ from those available earlier. Ryan contended at trial and on appeal (see 498 F.3d at 697–98) that §1346 is unconstitutionally vague, an argument that *Skilling* rejected. He never made the argument that prevailed in *Skilling*: that §1346 is limited to bribery and kickback schemes. Indeed, Ryan himself proposed some of the instructions that the judge gave, see 2010 U.S. Dist. LEXIS 134912 at *29 n.8, and with respect to them he has waived and not just forfeited the line of argument he makes now. See *United*

*States v. Olano*, 507 U.S. 725, 732–34 (1993) (discussing how waiver differs from forfeiture). With respect to arguments that were not made at trial, the appropriate standard on collateral review for evaluating the content of jury instructions is "cause and prejudice". See *Engle v. Isaac*, 456 U.S. 107 (1982); *United States v. Frady*, 456 U.S. 152 (1982). Collateral review is not just a rerun of the direct appeal, in which a defendant can use hindsight to craft better arguments. Societal interests in the finality of judgments, and in inducing parties to focus their energies on the trial and initial appeal, limit the scope of collateral review. See, e.g., *Harrington v. Richter*, 131 S. Ct. 770 (2011).

Ryan sees "cause" in this circuit's pre-*Skilling* law. The district court's rulings and instructions followed the understanding of §1346 articulated in *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998). We concluded in *Bloom* that a public official deprives the public of its intangible right to his honest services, and thus violates 18 U.S.C. §§ 1341 and 1346, if he secretly misuses his position, or the information derived from it, for personal gain. It would have been pointless to argue otherwise, Ryan contends, which in his view establishes "cause" for the failure to ask at trial and on appeal for instructions limiting §1346 to bribery and kickback schemes. (Ryan also insists that by making a constitutional objection to §1346, and contending that any honest-services offense depends on federal rather than state-law standards, he preserved the argument he advances now. The forfeiture as we see it is that Ryan never made in the district court or on appeal an argument that §1346 is best understood

to be significantly more limited than *Bloom* held. His current argument that the jury instructions were defective because they did not track *Skilling* is novel. What remains—as we discuss in more detail later—is a contention that he is not substantively culpable.)

There are two problems with an argument that Ryan has "cause" for any default: one practical, one doctrinal. The practical problem is that it would *not* have been pointless to argue that §1346 is limited to bribery and kickbacks. Both Ryan and Skilling were tried in 2006. Yet while Ryan's lawyers proposed instructions based on *Bloom*—which was more favorable to defendants than the law in some other circuits—Skilling's lawyers contended that §1346 is much narrower if not unconstitutionally vague. Skilling asked the Supreme Court to disapprove *Bloom*. That Court ruled in his favor. If Ryan's lawyers had done what Skilling's lawyers did, the controlling decision today might be *Ryan* rather than *Skilling*. (Ryan's petition for certiorari beat Skilling's to the Supreme Court.)

Nothing prevented Ryan from making the arguments that Skilling did. Many other defendants in this circuit contended that *Bloom* was wrongly decided. Conrad Black was among them. See *United States v. Black*, 530 F.3d 596 (7th Cir. 2008). (Black's arguments were not identical to Skilling's, but they came closer than Ryan's.) The Supreme Court heard Black's case along with Skilling's. See *Black v. United States*, 130 S. Ct. 2963 (2010). Because Black had preserved an objection to *Bloom*'s understanding of §1346, we inquired on remand

from the Supreme Court whether the errors were harm-
less. Black prevailed in part. See *United States v. Black*, 625
F.3d 386 (7th Cir. 2010). But that decision was a bona fide
rerun (on remand from the Supreme Court) of a direct
appeal. Ryan, who has resorted to collateral rather than
direct review, is not entitled to the same benefit.

Ryan's doctrinal problem is that "cause" in the formula
"cause and prejudice" means some impediment to
making an argument. That the argument seems likely to
fail is not "cause" for its omission. So *Bousley* tells us. The
Supreme Court held in *Bailey v. United States*, 516 U.S. 137
(1995), that 18 U.S.C. §924(c), which at the time made it
unlawful to "use" a firearm in connection with a drug
transaction, reached only "active" use of the gun; most
courts of appeals, by contrast, had equated "use"
with "possess". Kenneth Bousley had pleaded guilty
to a §924(c) charge rather than contest the eighth cir-
cuit's understanding of §924(c). After *Bailey*, he filed a
motion under §2255 seeking relief from his conviction.
His guilty plea, however, meant that he had forfeited
his opportunity to make an argument along the lines
that the Justices adopted in *Bailey*. Bousley argued that
the adverse circuit law constituted "cause" for this de-
fault. The Justices replied:

> While we have held that a claim that "is so novel
> that its legal basis is not reasonably available to
> counsel" may constitute cause for a procedural
> default, *Reed v. Ross*, 468 U.S. 1, 16 (1984), peti-
> tioner's claim does not qualify as such. The argu-
> ment that it was error for the District Court to

> misinform petitioner as to the statutory elements of §924(c)(1) was most surely not a novel one. See *Henderson*, 426 U.S., at 645–646. Indeed, at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that "use" is synonymous with mere "possession." See, e.g., *United States v. Cooper*, 942 F. 2d 1200, 1206 (CA7 1991) (appeal from plea of guilty to "use" of a firearm in violation of § 924(c)(1)), cert. denied, 503 U.S. 923 (1992). Petitioner also contends that his default should be excused because, "before *Bailey*, any attempt to attack [his] guilty plea would have been futile." Brief for Petitioner 35. This argument, too, is unavailing. As we clearly stated in *Engle v. Isaac*, 456 U.S. 107 (1982), "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.' " Id., at 130, n. 35. Therefore, petitioner is unable to establish cause for his default.

523 U.S. at 622–23 (footnote omitted). What the Court said in *Bousley* is equally true of Ryan.

But the Justices added that a forfeiture is not conclusive when a person is innocent. This is where *Davis* becomes important. That decision holds that collateral relief under §2255 is available when opinions released after a person's conviction show that he is in prison for an act that the law does not make criminal. Section 2255(a) authorizes relief for a person whose custody violates "the Constitution *or laws* of the United

States" (emphasis added). Davis had argued that statutory exegesis after his conviction established his innocence. The Justices wrote: "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under §2255." 417 U.S. at 346–47.

*Bousley* elaborated, holding that a prisoner is entitled to relief if actually innocent:

> To establish actual innocence, petitioner must demonstrate that, " 'in light of all the evidence,' " "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327–328 (1995) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160 (1970)). . . . It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. See *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

523 U.S. at 623–24. If *Skilling* establishes that Ryan is innocent of mail fraud, then he is entitled to relief notwithstanding his lawyers' failure to anticipate its holding. Jury instructions that misstate the elements of an offense are not themselves a ground of collateral relief; likewise with erroneous evidentiary rulings. See, e.g., *Henderson v. Kibbe*, 431 U.S. 145 (1977); *Estelle v. McGuire*, 502 U.S. 62 (1991); *Gilmore v. Taylor*, 508 U.S. 333 (1993); *Wilson v. Corcoran*, 131 S. Ct. 13 (2010). (Unconstitutional jury instructions are a different matter. See *Middleton v. McNeil*, 541 U.S. 433 (2004). But *Skilling* is about

statutory interpretation.) *Davis* and *Bousley* afford relief if a person is in prison for acts that the law does not make criminal. That standard depends on the content of the trial record, not the content of the jury instructions.

Ryan maintains that the prosecutor forfeited reliance on the distinction between actual innocence and defective jury instructions by filing a brief that ignores *Engle*, *Frady*, *Davis*, and *Bousley*. On collateral review, however, a court may elect to disregard a prosecutor's forfeiture, because the Judicial Branch has an independent interest in the finality of judgments. See, e.g., *Day v. McDonough*, 547 U.S. 198 (2006) (holding a collateral attack barred as late, despite the prosecutor's erroneous statement to the district court that the petition was timely). Ryan's trial lasted eight months, and his appeal led to more than 100 pages of opinions by four judges of this court. It would be inappropriate to treat this collateral proceeding as a second direct appeal. It is not as if the United States gave the game away; to the contrary, it argued that the errors in the instructions are harmless because the record at trial establishes that Ryan took bribes in exchange for official services. If he did, then *Skilling* permits his conviction for mail fraud.

The right question under *Davis* and *Bousley* is whether, applying current legal standards to the trial record, Ryan is entitled to a judgment of acquittal. If yes, then the mail fraud convictions must be vacated; if no, then they stand. This is the approach we took to §924(c) prosecutions after *Bailey*. See, e.g., *Gray–Bey v. United States*, 209 F.3d 986 (7th Cir. 2000); *Young v. United States*, 124 F.3d 794 (7th

Cir. 1997); *Broadway v. United States*, 104 F.3d 901 (7th Cir. 1997); *Nuñez v. United States*, 96 F.3d 990 (7th Cir. 1996). It is equally applicable to mail-fraud prosecutions after *Skilling*.

On the record at trial, a jury could have convicted Ryan of mail fraud using the legal standard set by *Skilling*. He is therefore not entitled to collateral relief.

The record shows compellingly—indeed, Ryan admits—that he received substantial payments from private parties during his years as Secretary of State and Governor. The failure to report and pay tax on this income underlies the tax convictions. The debate at trial on the racketeering and mail-fraud charges was whether these payments were campaign contributions, plus gifts from friends and well-wishers, or were instead bribes designed to influence Ryan's official actions. If a reasonable jury could find that the payments were bribes, then the mail-fraud convictions survive *Skilling*.

Our initial opinion summed up the core of the charges:

> The story behind this case began in November 1990 when Ryan, then the Lieutenant Governor of Illinois, won election as Illinois's Secretary of State. He was re-elected to that post in 1994. Throughout Ryan's two terms in that office, [Lawrence E.] Warner [Ryan's co-defendant] was one of Ryan's closest unpaid advisors. One of Ryan's duties as Secretary of State was to award leases and contracts for the office, using a process of competitive bidding for major contracts and selecting leases based on the staff's assessments

of multiple options. Improprieties in awarding four leases and three contracts form the basis of the majority of the RICO and mail fraud counts against Warner and Ryan, as these leases and contracts were steered improperly to Warner-controlled entities. The result was hundreds of thousands of dollars in benefits for Warner and Ryan. These benefits included financial support for Ryan's successful 1998 campaign for Governor of Illinois.

498 F.3d at 675. Ryan observes that the jury was not required to determine whether Warner's payments were bribes or kickbacks. True enough; the question under the instructions, based as they were on *Bloom*, was whether Ryan had received a secret financial benefit. See also *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007). But there is no doubt that a properly instructed jury *could* have deemed the payments bribes or kickbacks; the inference that they were verges on the inescapable. The district court's opinion canvasses the evidence and demonstrates why a reasonable jury could find that Ryan sold his offices to the high bidders. 2010 U.S. Dist. LEXIS 134912 at *52–83. It is unnecessary for us to repeat the exercise.

AFFIRMED