In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-3426

CECIL TURNER,

*Petitioner-Appellee,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 10-cv-1140—**Joe Billy McDade**, *Judge.*

ARGUED MAY 31, 2012—DECIDED SEPTEMBER 6, 2012

Before BAUER, SYKES, and TINDER, *Circuit Judges*.

SYKES, *Circuit Judge*. Cecil Turner was convicted on four counts of wire fraud and two counts of making false statements to the FBI stemming from a scheme to defraud the State of Illinois of salaries paid to but not earned by a team of janitors responsible for cleaning state office buildings in Springfield, Illinois. As was typical at the time in federal fraud prosecutions, the wire-fraud counts were submitted to the jury on alternative

theories that Turner aided and abetted a scheme to defraud the State of Illinois of its money and also its right to honest services. *See* 18 U.S.C. §§ 1343, 1346. We affirmed the judgment in 2008. *See United States v. Turner*, 551 F.3d 657 (7th Cir. 2008).

Two years later, the Supreme Court decided *Skilling v. United States*, 130 S. Ct. 2896 (2010), limiting the honest-services fraud statute to schemes involving bribes or kickbacks. Turner filed a § 2255 motion asking the district court to vacate the wire-fraud convictions based on *Skilling* error, and the court agreed. The case returns to us on the government's appeal asking us to order the wire-fraud convictions reinstated.

We reverse. The *Skilling* error was harmless. As we noted in our earlier opinion, "the honest services alternative was unnecessary to Turner's conviction." *Turner*, 551 F.3d at 666. The evidence was coextensive on the two fraud theories; the jury could not have convicted Turner of honest-services fraud without also convicting him of pecuniary fraud.

## I. Background

We assume familiarity with our prior opinion and offer only a brief summary of the background facts. Dana Dinora was an assistant superintendent of public works in the City of Springfield, Illinois, and in that capacity could ensure expedited sanitation services for local home-owners with the right connections. Dinora was also the head of a three-man janitorial team working nights

cleaning state office buildings in Springfield. In the latter position, he masterminded a scheme for his crew to frequently avoid reporting for work while still collecting full pay. We described his elaborate but illicit scheme in our opinion deciding Turner's direct appeal:

> At its peak the scheme allowed Dinora to collect a full salary while working less than 30 minutes each day and the others to receive full pay while cutting their work hours in half. Sometimes one janitor would remain at work while the other two were absent; the "on duty" janitor would tip off the absent ones if questioned by a supervisor about the whereabouts of the other members of the crew. The absent janitors would then come in to work, call the supervisor who made the inquiry, or submit an appropriate leave slip. Another feature of the scheme involved leaving a note in one building falsely representing that the absent janitor was working in another building. The three janitors also kept two sets of attendance logs. The first accurately recorded occasions when one or more of the janitors did not work a full shift and submitted a proper leave request. If no one checked their work that night, however, the "on-duty" janitor would replace the first, accurate attendance log with a second log falsely recording that all three had been working the entire night.

*Turner*, 551 F.3d at 660.

But one man cannot do the work of three, and soon the state of the buildings began to betray the malfeasance.

Complaints about workplace conditions from building occupants made their way up the chain of command to Turner, who was the director of physical services for the Illinois Secretary of State, and in that capacity was responsible for maintaining state-owned buildings in Springfield. Turner and his wife, Doris, a member of the County Board, knew Dinora because (among other things) Dinora had granted them a priority-home designation for garbage pickup. Turner ran interference covering up the fraudulent scheme, ordering his subordinates to ignore the complaints about the condition of the buildings. Eventually a middle manager defied Turner and reported the misconduct to the Inspector General, who in turn alerted the FBI. Turner, Dinora, and the two junior janitors were indicted for defrauding Illinois taxpayers of over $150,000 in unearned pay. The three custodians each pleaded guilty.

Turner took his case to a jury and lost. He was convicted on two counts of making false statements to the FBI, *see* 18 U.S.C. § 1001, and four counts of wire fraud for aiding and abetting the janitors' scheme to defraud the State of Illinois of money and honest services, *see* 18 U.S.C. §§ 1343, 1346. On direct appeal Turner challenged his convictions on all six counts. We rejected his arguments and affirmed across the board. *Turner*, 551 F.3d at 668-69.

The Supreme Court later decided *Skilling*, which involved a due-process vagueness challenge to the honest-services fraud statute. The Court adopted a limiting construction to cure the statute's vagueness, restricting the

scope of honest-services fraud to cases involving bribes or kickbacks. 130 S. Ct. at 2931. Turner's case involved neither, so he filed a § 2255 motion asking the district court to vacate his wire-fraud convictions in light of *Skilling*. The government opposed this request, arguing that the *Skilling* error was harmless because the evidence was coextensive on both pecuniary and honest-services fraud. The district court sided with Turner, granted the motion, and vacated the wire-fraud convictions. The government appealed.

## II. Discussion

The government concedes the *Skilling* error,[1] but argues that (1) Turner procedurally defaulted it because he did not challenge the constitutionality of the honest-services statute in his direct appeal; and (2) the *Skilling* error was harmless in any event. Turner responds that he had cause for his decision not to bring such a challenge. *See Reed v. Farley*, 512 U.S. 339, 354 (1994) (requiring cause and prejudice to excuse a procedural default). He argues that our decision in *United States v. Bloom*, 149 F.3d 649 (7th Cir. 1998), foreclosed a successful challenge to the constitutionality of the honest-services

---

[1] The government also concedes that *Skilling* applies retroactively to cases on collateral review. *See Ryan v. United States*, 645 F.3d 913, 915 (7th Cir. 2010) (declining to answer the retroactivity question but noting that *Davis v. United States*, 417 U.S. 333 (1974), and *Bousley v. United States*, 523 U.S. 614 (1998), "imply an affirmative answer").

statute. We rejected this argument in *Ryan v. United States*, 645 F.3d 913, 916-17 (7th Cir. 2011). There, the defendant also tried to establish cause for his failure to challenge the honest-services statute on direct appeal based on the futility of the claim under *Bloom*. We held that the meaning of "'cause' in the formula 'cause and prejudice' means some impediment to making an argument. That the argument seems likely to fail is not 'cause' for its omission." *Id.* at 916.

Here, however, the government has its own procedural obstacle: It overlooked Turner's procedural default in its opposition to collateral relief in the district court. The government says that we should excuse its forfeiture while holding Turner to his default. It is clear we have the discretion to do so. *See Wood v. Milyard*, 132 S. Ct. 1826, 1832-34 (2012); *Ryan,* 645 F.3d at 917-18 ("On collateral review, however, a court may elect to disregard a prosecutor's forfeiture, because the Judicial Branch has an independent interest in the finality of judgments."). But that discretion is reserved for exceptional cases. *Wood*, 132 S. Ct. at 1834; *Ryan v. United States*, 2012 WL 3156309, at *2 (7th Cir. Aug. 6, 2012). Here, we exercise our discretion to proceed to the merits.

The sole merits question is whether the conceded *Skilling* error was harmless. Normally a verdict must be "set aside in cases where the verdict is supportable on one ground, but not another, and it is impossible to tell which ground the jury selected." *Yates v. United States*, 354 U.S. 298, 312 (1957). But *Skilling* held that "errors of the *Yates* variety are subject to harmless-error analysis." 130 S. Ct. at 2934; *see also United States v. Segal*, 644 F.3d

364, 365-66 (7th Cir. 2011); *United States v. Black*, 625 F.3d 386, 388 (7th Cir. 2010). The harmless-error question here depends on whether the trial evidence was such that the jury must have convicted Turner on both theories of fraud. *Segal*, 644 F.3d at 366; *Black*, 625 F.3d at 388; *United States v. Colvin*, 353 F.3d 569, 577 (7th Cir. 2003) (en banc) ("We do not see how the jury could have convicted Colvin of using fire to commit the § 241 conspiracy and not the § 3631 felony.").

Stated differently, if the evidence on the two fraud theories was so thoroughly coextensive that the jury could only find the defendant guilty or not guilty of both, then the conviction will stand even though one theory is later held to be legally invalid. As we stated in *Segal*:

> So the issue here boils down to this: would the jury have still convicted Segal had it not been told that in addition to the valid money/property fraud allegations, an allegation of honest services fraud could also be taken into consideration? We conclude that the jury would—and most certainly did—convict Segal for money/property fraud, irrespective of the honest services charge. This is because even if the jury concluded that there was an honest services violation, that violation had to be premised on money/property fraud. That is, to the extent Segal was depriving others of his honest services, it was because he was taking their money.

*Segal*, 644 F.3d at 366.

Although the district judge thought otherwise, we conclude that the jury can only have convicted Turner on

both wire-fraud theories. As we explained in our earlier opinion, the core of the case against Turner was that he aided and abetted the janitors' scheme to defraud the State of Illinois of its money—in the form of thousands of dollars in salaries paid for no work—by helping to perpetuate and cover it up. *Turner*, 551 F.3d at 659, 666. The honest-services fraud theory was thus entirely "premised [up]on [the] money/property fraud." *Id*. at 666. On the evidence in this case, the jury could not have convicted Turner for honest-services fraud had it not been convinced beyond a reasonable doubt that he aided and abetted the janitors' money-fraud scheme. In short, this prosecution was an all-or-nothing proposition. Either Turner was guilty of aiding and abetting a pecuniary *and* an honest-services fraud (as it was then understood), or he was not guilty of either type of fraud.

Accordingly, even though Turner "could not lawfully be convicted of honest-services fraud[,] . . . it is not open to reasonable doubt that a reasonable jury would have convicted [him] of pecuniary fraud." *Black*, 625 F.3d at 388. Because the *Skilling* error was harmless, the wire-fraud convictions can stand. We therefore REVERSE and REMAND with instructions to reinstate Turner's wire-fraud convictions.