# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 12, 2013

No. 12-60423

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RICHARD F. SCRUGGS, also known as Dickie.

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before STEWART, Chief Judge, and SMITH and WIENER, Circuit Judges.
WIENER, Circuit Judge:

Defendant–Appellant Richard F. "Dickie" Scruggs appeals the denial of his § 2255 motion challenging one of his two convictions for bribing a judge. We affirm.

## I. Facts & Proceedings

Scruggs made both a name and a fortune as a plaintiffs' attorney in asbestos and tobacco litigation. Along the way, he became entangled in many fee-sharing disputes with co-counsel, one of which resulted in a lawsuit filed by Robert Wilson in the Circuit Court of Hinds County, Mississippi ("the *Wilson* Case"). Robert "Bobby" DeLaughter, best known first for successfully

No. 12-60423

prosecuting Byron De La Beckwith for murdering civil rights leader Medgar Evers, sat on the Circuit Court of Hinds County, where he was assigned the *Wilson* Case and his path crossed with Scruggs.

Scruggs wanted a sure thing in the *Wilson* Case, having recently lost a similar fee fight. As the presiding judge, DeLaughter could put his finger on the scales. DeLaughter coveted a federal Article III judgeship more than anything else; as the brother-in-law of then-United State Senator Trent Lott, Scruggs could influence the person who sent candidates to the President. In early 2006, Scruggs retained Ed Peters, a close friend and mentor of DeLaughter's, as a secret go-between who conveyed an offer: If DeLaughter would help Scruggs win the *Wilson* Case, Scruggs would recommend DeLaughter to Lott for a district court judgeship.

DeLaughter kept his end of the bargain: When Scruggs badly needed a trial continuance, DeLaughter entered, verbatim, a scheduling order prepared by one of Scruggs's attorneys, despite having disclaimed input from either party. DeLaughter also reviewed yet-to-be-filed motions for Scruggs, advising how he would rule and which arguments needed work.

During 2006, three judicial vacancies opened on Mississippi federal district courts. In March 2006, after being passed over for nomination to one of those seats, DeLaughter relayed his dissatisfaction and concern that "he was doing his part of the bargain and that . . . Scruggs was not going to fulfill his part of the deal." Immediately thereafter, Scruggs had Senator Lott call DeLaughter. Although the record suggests that Lott did not say that DeLaughter was being considered, DeLaughter nonetheless came away with the impression that he was in the running for the seat.

Mollified that Scruggs was keeping his end of the bargain, DeLaughter continued secretly to tilt the scales in the *Wilson* Case. When Wilson filed a potentially dispositive motion asking DeLaughter to quantify the amount of fees

No. 12-60423

Scruggs still owed, Scruggs's attorneys did not know whether to oppose the motion and pursue a full trial or to agree to submit the quantification issue to the judge. DeLaughter assured them that Scruggs would win the quantification motion, and he did. After faxing a preview of his order to Scruggs's counsel, DeLaughter held that Scruggs owed no more than he had already paid and denied Wilson's motion for reconsideration without comment. But the quantification order was so favorable that even Scruggs's attorneys worried that it could not be affirmed on appeal, so Scruggs settled the *Wilson* Case before appeal with the help of DeLaughter, who revealed Wilson's confidential settlement position.

These machinations came to light when members of Scruggs's legal team began cooperating with the government's investigation of an unrelated judicial bribery scheme. A grand jury returned an indictment charging Scruggs and DeLaughter with one count of conspiracy to commit federal programs bribery, in violation of 18 U.S.C. § 666, and three counts of aiding and abetting honest-services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346.[1] The honest-services counts in the indictment alleged "a scheme and artifice to secretly and corruptly influence" DeLaughter, thus "depriving [Wilson] and the citizens of the State of Mississippi of their intangible right to [his] honest services." In particular, the indictment alleged that Scruggs prevailed on Lott to consider DeLaughter, and "in return" DeLaughter provided secret access and favorable treatment.

Scruggs pleaded guilty to a superseding information charging him with a single count of aiding and abetting honest-services mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346. Like the original indictment, the information alleged a scheme corruptly to influence DeLaughter and deprive the citizens of

---

[1] The indictment also charged DeLaughter (but not Scruggs) with one count of obstruction of justice. DeLaughter pleaded guilty only to that count.

3

No. 12-60423

Mississippi of their right to his honest services, describing Scruggs's call to Lott on DeLaughter's behalf. But the Information omitted that which DeLaughter did for Scruggs "in return."

Pursuant to a plea agreement, the charges in the indictment were dismissed. Scruggs was sentenced to imprisonment for seven years, concurrent with a prior five-year term for conspiring to bribe another judge who was presiding over a different fee dispute.

On June 24, 2010, the Supreme Court issued *Skilling v. United States* in which it addressed the constitutionality of 18 U.S.C. § 1346, the honest-services statute.[2]  Section 1346 states that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." To avoid problems of constitutional vagueness with this definition, the Court in *Skilling* limited the application of the statute to paradigmatic bribery and kickback schemes only.[3]  In June 2011, Scruggs filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, contending in light of *Skilling* that, as he did not admit to bribing Judge DeLaughter, he is not guilty of a crime.

The district court concluded that, by pleading guilty, Scruggs had procedurally defaulted on that claim. After a two-day evidentiary hearing, the district court issued a thorough 48-page opinion denying the § 2255 motion because Scruggs had not shown either his actual innocence or cause and prejudice. The district court issued a certificate of appealability on the issue of "actual innocence" and "other issues in the opinion," and Scruggs timely filed a notice of appeal.

## II. Analysis

### A. Standard of Review

---

[2] 130 S. Ct. 2896 (2010).

[3] *See id.* at 2932-33.  We limit the discussion here to bribes because kickbacks are not implicated.

"In reviewing a district court's denial of a motion to vacate sentence under § 2255, we review questions of fact for clear error and questions of law de novo."[4]

## B.     Merits

Scruggs pleaded guilty.  A voluntary and unconditional guilty plea waives all non-jurisdictional defects.[5]  Not surprisingly, then, most of the issues raised by Scruggs in this appeal are attempts to evade that waiver.[6]  He first tries to parlay *Skilling* into a challenge to the district court's subject matter jurisdiction; he then attempts to excuse his procedural default; and finally, he challenges the constitutionality of the honest-services statute.  The district court rejected each argument, and we agree.

### 1.     Subject Matter Jurisdiction

After *Skilling*, honest-services fraud requires proof of a bribe.[7]  Because his information does not use the word "bribe," Scruggs urges that it no longer charges an offense.  Therefore, he contends, the district court had no jurisdiction over his "non-offense" and could not accept his guilty plea.  Scruggs understandably leads off with this assertion because subject matter jurisdiction "can never be forfeited or waived."[8]  This contention is no more successful now, however, than it was when Dickie's son Zach raised it in *United States v.*

---

[4] *E.g.*, *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

[5] *E.g.*, *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008).

[6] We assume without deciding that Scruggs's § 2255 motion is not facially frivolous. It is at least plausible that the facts introduced at his plea colloquy do not suffice to establish honest-services fraud as defined after *Skilling.*

[7] *Skilling*, 130 S. Ct. at 2932-34; *United States v. George*, 676 F.3d 249, 257 (1st Cir. 2012).

[8] *United States v. Cotton*, 535 U.S. 625, 630 (2002); *but see United States v. Scruggs*, 691 F.3d 660, 667 n.15 ("In addition, this court has stated in dicta that jurisdictional claims not raised on direct appeal are procedurally defaulted and cannot be raised on collateral review without a showing of cause and prejudice or actual innocence.").

No. 12-60423

*Scruggs*.[9]   As we explained in Zach's case, Scruggs "confuses a failure of fact with want of power to adjudicate" and does not implicate subject matter jurisdiction.[10]

Subject matter jurisdiction, or the "court's power to hear a case,"[11] is straightforward in the criminal context.  Title 18 U.S.C. § 3231 grants "original jurisdiction . . . of all offenses against the laws of the United States" to the district courts.[12]   To invoke that grant of subject matter jurisdiction, an "'indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute.'"[13] That is the extent of the jurisdictional analysis: "[A] federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges . . . that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."[14]

In charging Scruggs with honest-services mail fraud under § 1346, the information used the language of that statute, which *Skilling* did not change.[15] The district court thus had subject matter jurisdiction over this case.  Although

---

[9] 691 F.3d 660, 666-67 (5th Cir. 2012).

[10] *Id.* at 667.

[11] *Cotton*, 535 U.S. at 630.

[12] *See Hugi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999).

[13] *Scruggs*, 691 F.3d at 668 (quoting *United States v. Jacquez-Beltran*, 326 F.3d 661, 662 n.1 (5th Cir. 2003) (per curiam)).  We look only at the face of the charging document to assess subject matter jurisdiction.  *Id.* at 667-68.

[14] *United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir. 2002).  An indictment or information could fail to invoke criminal subject matter jurisdiction by alleging violation of a state criminal statute, *see United States v. Titterington*, 374 F.3d 453, 459 (6th Cir. 2004), or by failing to comply with another statutory jurisdictional requirement, *see United States v. Sealed Juvenile 1*, 225 F.3d 507, 508-09 (5th Cir. 2000).

[15] *George* 676 F.3d at 257 ("But *Skilling* did not invalidate the definition limned in 18 U.S.C. § 1346 . . . .").

there was no express allegation of a *quid pro quo* bribe, the Supreme Court has held unequivocally in *United States v. Cotton* that "defects in an indictment do not deprive a court of its power to adjudicate a case."[16]  "[T]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case" and does not affect subject matter jurisdiction.[17]  Even though *Skilling* might have "rendered the instant information *factually* insufficient, it did not divest the district court of subject matter jurisdiction over the case."[18]

All that Scruggs can really say is that, as a factual matter, the allegations of the information no longer suffice to allege honest-services fraud in light of *Skilling*.  This is simply not a jurisdictional argument, and none of the cases that might appear to hold otherwise withstand scrutiny.

Scruggs first cites *United States v. Meacham*, an old, pre-*Cotton* case, in which we vacated a conviction based on a guilty plea to the non-existent crime of "conspiracy to attempt" to import drugs.[19]  We did so because "entry of a guilty plea does not act as a waiver of jurisdictional defects such as an indictment's failure to charge an offense."[20]  In light of *Cotton*, we have disavowed *Meacham*'s "classif[ication] as jurisdictional the requirement that the indictment state an offense."[21]  *Meacham* does not help Scruggs.[22]

---

[16] 535 U.S. at 630.

[17] *Id.* at 630-31 (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)).

[18] *See George*, 676 F.3d at 260 (citation omitted and emphasis in original).

[19] 626 F.2d 503, 508 (5th Cir. 1980).

[20] *Id.* at 510.

[21] *See United States v. Cothran*, 302 F.3d 279, 283 (5th Cir. 2002).

[22] In *Meacham*, the statutory offense alleged in the indictment did not exist. *See* 626 F.2d at 508.  Conceivably *Meacham* may remain good law in that very narrow circumstance because an indictment that charges a violation of a non-statute does not give rise to subject matter jurisdiction under § 3231.  But after *Cotton* it cannot be read to mean that factual

He next cites *United States v. Rosa-Ortiz*, in which the First Circuit stated that a district court "lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law whatsoever."[23] But the First Circuit has abandoned that holding as "an awkward locution" inconsistent with *Cotton*.[24] As that court later explained, the factual failure of an indictment to charge an offense is not a jurisdictional flaw in "the district court's power to adjudicate the case."[25]

Scruggs lastly relies on the Eleventh Circuit decision in *United States v. Peter*.[26] The defendant in *Peter* pleaded guilty to a RICO conspiracy predicated on a single count of mail fraud that was based on misrepresentations in a liquor license application.[27] The Supreme Court later held that state licenses are not property for the purposes of the mail fraud statute, thus undermining the conviction in *Peter*.[28] The Eleventh Circuit concluded that this caused a jurisdictional defect in the defendant's indictment: As "the indictment consisted only of specific conduct that, as a matter of law, was outside the sweep of the charging statute," this defect went to the jurisdiction of the district court.[29] Although *Peter* acknowledged *Cotton*, it attempted to limit the Supreme Court's

---

failure to allege a violation of a valid federal statute is a jurisdictional flaw.

[23] 348 F.3d 33, 36 (1st Cir. 2003).

[24] *See George*, 676 F.3d at 259-60.

[25] *See id.* at 260.

[26] 310 F.3d 709 (11th Cir. 2002).

[27] *Id.* at 711.

[28] *See id.* (discussing *Cleveland v. United States*, 531 U.S. 12 (2000)).

[29] *See id.* at 714.

holding to defects based on omissions from an indictment rather than on a factual failure to charge an offense.[30]

In *Scruggs*, we implied reservations about "*Peter*'s fidelity to *Cotton*."[31] Subsequently, the Tenth Circuit issued a thoughtful opinion in *United States v. DeVaughn*, rejecting *Peter* for its inconsistency with *Cotton*.[32] *De Vaughn* carefully analyzed *Cotton* and the authorities on which it relied, then rejected "*Peter*'s overly narrow reading of *Cotton*."[33] We agree with that reasoning. *Cotton* unambiguously declared that a defective indictment does not deprive a district court of subject matter jurisdiction.[34] We join the Tenth Circuit in holding that *Peter* was wrongly decided and cannot be squared with *Cotton*.

To summarize, nothing about *Skilling* has any effect on the district court's subject matter jurisdiction over Scruggs's guilty plea. As there is no jurisdictional problem, and as Scruggs pleaded guilty, we consider whether he has shown an exception for his procedural default.

### 2. Procedural Default

"It is well settled that a voluntary and intelligent plea of guilty . . . may not be collaterally attacked."[35] Scruggs pleaded guilty, took no direct appeal, and never contended that § 1346 was unconstitutionally vague. To pursue this collateral attack, therefore, he must show "cause and prejudice or that he is actually innocent."[36] He attempts to demonstrate the presence of both.

---

[30] *See id.* at 713-14.

[31] *Scruggs*, 691 F.3d at 669.

[32] *United States v. De Vaughn*, 694 F.3d 1141 (10th Cir. 2012).

[33] *Id.* at 1148.

[34] 535 U.S. at 631.

[35] *Bousley v. United States*, 523 U.S. 614, 621 (1998).

[36] *Scruggs*, 691 F.3d at 666.

No. 12-60423

### a.     Cause and Prejudice

Scruggs claims that our pre-*Skilling* precedent precluded any assertion that his information did not charge a crime, so he was prohibited from raising the issue at that time.  But "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time."[37] Indeed, Scruggs could have challenged the honest-services statute as unconstitutionally vague, just as did Skilling.[38]  In fact, parties routinely raise arguments to preserve them for further review despite binding authority to the contrary.  We join other circuits and the overwhelming majority of district courts in recognizing no cause for procedural default of a *Skilling*-type challenge to § 1346.[39]  And, as Scruggs has not shown cause, we need not and therefore do not reach prejudice.[40]

### b.     Actual Innocence

Scruggs professes in the alternative that he is actually innocent of honest-services fraud.  The district court rejected this claim, concluding that Scruggs actually bribed Judge DeLaughter.  Scruggs contends that the district court erred on both the law and the facts by (1) requiring him to show innocence on a bribery theory of honest-services fraud to which he did not plead guilty, and (2) finding a *quid pro quo* exchange when none existed. We address each contention in turn.

---

[37] *Bousley*, 523 U.S. at 623 (internal quotation marks omitted).

[38] *See Ryan v. United States*, 645 F.3d 913, 917 (7th Cir. 2011) ("If Ryan's lawyers had done what Skilling's lawyers did, the controlling decision today might be *Ryan* rather than *Skilling*."), *vacated on other grounds*, 132 S. Ct. 2099 (2012).

[39] *See Turner v. United States*, 693 F.3d 756, 758 (7th Cir. 2012); *Walker v. Rivera*, 820 F. Supp. 2d 709, 714 (D.S.C. 2011), *aff'd* 468 F. App'x 341 (4th Cir. 2012); *see also United States v. Jennings*, 2011 WL 3609298 (D. Minn. Aug. 15, 2011), *aff'd*, 696 F.3d 759 (8th Cir. 2012); *Stinn v. United States*, 856 F. Supp. 2d 531, 539 & n.9 (E.D.N.Y. 2012).

[40] *E.g.*, *Johnson v. Puckett*, 176 F.3d 809, 817 (5th Cir. 1999).

No. 12-60423

     i.     Actual Innocence of Honest-Services Fraud Under
What Theory?

A § 2255 petitioner must show that he is factually innocent of both (1) the charges to which he pleaded guilty and (2) any "more serious" charges forgone by the government in the course of plea bargaining.[41] The petitioner need not, however, show actual innocence of alternative theories not charged in the information or indictment.[42]

The district court concluded that because Scruggs pleaded guilty to honest-services fraud, he must show actual innocence of honest-services fraud as it is now limited, *viz.*, under a bribery theory. Scruggs disagrees and insists that he should not have to show actual innocence of bribery because (1) the one-count information did not allege a bribery theory, and (2) the counts in the dismissed indictment, although bribery-based, were not "more serious."[43]

Citing our opinion in *United States v. Arreola-Ramos*, Scruggs suggests that a crime's statutory maximum sentence is the measure of that crime's "seriousness."[44] He insists that, because the charges in his original indictment and in his superseding information were all honest-services fraud charges with the same twenty-year statutory maximum, the dismissed charges were only "as

---

[41] *Bousley*, 523 U.S. at 624.

[42] *See id.* (requiring petitioner to show innocence of "using" firearms but not "carrying" because "carrying" was neither charged in indictment nor forgone in exchange for guilty plea).

[43] If Scruggs does not have to show actual innocence of a bribery theory, then he has carried his burden because the crime of non-bribery honest-services fraud is no longer constitutional.

[44] 204 F.3d 1115, at *1 (5th Cir. Dec. 14, 1999) (unpublished table opinion) ("Moreover, as the district court noted, Arreola was definitely exposed to more lengthy terms of imprisonment on the cocaine charges than on the charges to which he eventually pled guilty; the plea bargain reduced his maximum exposure from sixty years to nine years imprisonment.").

serious as," not "more serious than," the charge to which he pleaded.[45]  But, in *Arreola-Ramos* we assessed "seriousness" by cumulating the statutory maximums for all of the forgone counts and all of the pleaded counts to determine the petitioner's "maximum exposure" before and after the plea, not by comparing the highest single maximum sentence on each side.[46]  Although *Arreola-Ramos* is unpublished and thus not precedential, we agree with its implicit reasoning based on a district court's discretion to impose consecutive sentences on multiple counts.[47]

Pursuant to the plea agreement in this case, the government dismissed three honest-services fraud counts in the indictment in exchange for Scruggs's guilty plea to one honest-services fraud count in the superseding information. Three honest-services counts have a potential sentence of sixty years when assessed consecutively and are thus more serious than one count with a twenty-year maximum.  Under *Bousley*, Scruggs was therefore required to show actual innocence of the honest-services counts in the original indictment, which he concedes charged a bribery theory that survives *Skilling*.[48]

ii.    Actual Innocence of Bribery

The burden is on the § 2255 petitioner to show that "in light of all the evidence it is more likely than not that no reasonable juror would have convicted

---

[45] The Indictment also alleged one violation of 18 U.S.C. § 666.  In light of our holding in *United States v. Whitfield*, that charge is no longer viable.  *See* 590 F.3d 325, 345-46 (5th Cir. 2009).

[46] *See Arreola-Ramos*, 204 F.3d at *1.

[47] *See* 18 U.S.C. § 3584.

[48] We do not address whether the single count in the superseding information also opens the door to a bribery theory.  *See Skilling*, 130 S. Ct. at 2928 (explaining that core of honest-services cases "involved fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived.").

No. 12-60423

him,"[49] "or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt."[50]

In *Skilling*, the Court did not crystallize what constitutes a "paradigmatic bribe," but it did observe that the "prohibition on bribes and kickbacks draws content" from case law and federal statutes.[51] And, the Court cited our decision in *United States v. Whitfield* as an example.[52] In that case, we considered honest-services fraud in the context of bribes disguised as campaign contributions to Mississippi state judges.[53] We assumed without deciding that, in the context of campaign contributions, the First Amendment requires proof of an express *quid pro quo* or a corrupt agreement to exchange something for a specific official act.[54] Because Scruggs insists that his exercise of influence on behalf of Judge DeLaughter was a political endorsement protected by the First Amendment, we again assume *arguendo*, for the purposes of this case only, that a *quid pro quo* is required.

We agree with the district court in concluding that the record overwhelmingly establishes the existence of a corrupt bribery agreement between Scruggs and DeLaughter. Early in the *Wilson* Case, Scruggs raised the issue of DeLaughter's federal aspirations and his own ability to assist. And

---

[49] 523 U.S. at 623 (internal quotation marks omitted).

[50] *House v. Bell*, 547 U.S. 518, 538 (2006). The district court erred by framing the issue as whether a single reasonable juror would vote to convict, rather than whether any reasonable juror would have reasonable doubt. This error is easily corrected on review, even though we question whether there is a quantum of evidence that would convince one hypothetical juror but would not convince twelve hypothetical reasonable jurors.

[51] *Skilling*, 130 S. Ct. at 2933-34.

[52] *Id.* (citing *Whitfield*, 590 F.3d at 352-53).

[53] 590 F.3d at 347-48.

[54] *See id.* at 353.

Scruggs's recommendation to his Senator brother-in-law was a thing of value, at least to DeLaughter. There is abundant testimony regarding the "deal" or "arrangement" that they reached shortly thereafter, and of DeLaughter's official actions in exchange for the bribe. In short, the record supports all of the elements of a paradigmatic *quid pro quo* bribe.

Scruggs argues on appeal that there is no proof of a causal connection between his actions and DeLaughter's, insisting that the record reveals only parallel favorable action without the causative *pro* in the *quid pro quo*. According to Scruggs, he already had secret *ex parte* access before there were any vacancies in Mississippi federal courts and before Senator Lott called DeLaughter, so nothing Scruggs did to assist DeLaughter's ambitions could have caused DeLaughter to take any actions in his favor.

This view is too narrow. In *Whitfield*, we held that a *quid pro quo* bribe is still a bribe even if it is offered "in exchange for an official act to be performed sometime in the future."[55] For the same reason, a bribe that takes the form of a promise to assist later—here, with a future district court vacancy—is still a bribe.[56] Scruggs promised to assist DeLaughter, and in exchange DeLaughter favored him in the *Wilson* Case. The fact that Scruggs was delayed in upholding his end of the bargain is at most a difference without a distinction.

Scruggs has shown neither his actual innocence of post-*Skilling* honest-services fraud nor that there was cause and prejudice for failing to raise a constitutional-vagueness challenge to § 1346. Accordingly, he procedurally defaulted the claim, and the district court correctly denied his § 2255 motion.

---

[55] 590 F.3d at 353 (emphasis and internal quotation marks omitted).

[56] *See United States v. Terry*, 707 F.3d 607, 614 (6th Cir. 2013) (holding that bribed judge does not have "the First Amendment right to sell a case so long as the buyer has not picked out *which* case at the time of sale.").

### 3.    Overbreadth

Finally, Scruggs throws in a First Amendment overbreadth challenge to § 1346.  If the honest-services statute applies to bribes that take the form of political endorsements, then—according to Scruggs—it is facially overbroad. This, he contends, is because it will chill protected political speech.[57]  "A statute is overbroad if in banning unprotected speech, a substantial amount of protected speech is prohibited or chilled in the process."[58]  "The overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."[59]  Scruggs argues at length that, if § 1346 applies to political endorsements, then overzealous prosecutors will perceive nefarious bribery in routine political activity, such as when a politician appoints a former backer to a position, thereby discouraging endorsements.  He cites well known historical examples of run-of-the-mill political back-scratching that, although not bribery, would be suppressed by such an expansive reading of § 1346.  For example, Scruggs suggests that if he is guilty of honest-services fraud then so was President John Adams for appointing his supporter, William Marbury, as a District of Columbia justice of the peace.

We see no real likelihood that § 1346 will chill a significant amount of protected political speech, if any, and even less likelihood that President Adams would have had cause to worry about prosecution for honest-services fraud.  "As to arbitrary prosecutions," the Supreme Court itself "perceive[d] no significant

---

[57] We note that this challenge has little to do with *Skilling*; if § 1346 impinges on the First Amendment, it did so well before the Supreme Court limited it to bribes and kickbacks. Thus, this overbreadth challenge is probably untimely under § 2255(f), but because the Government did not raise this as a bar we proceed to the merits of the argument.

[58] *United States v. Brooks*, 681 F.3d 678, 697 (5th Cir. 2012).  Only chilling is at issue because § 1346 now prohibits only bribes, which Scruggs concedes are not protected by the First Amendment.

[59] *Asgeirsson v. Abbott*, 696 F.3d 454, 465 (5th Cir. 2012) (internal quotation marks omitted).

risk that the honest-services statute ... will be stretched out of shape."[60] We also note that the honest-services statute has been on the books for a quarter of a century, most of that time without the limitations imposed by *Skilling*, with no sign of chilled political endorsements or the overreaching prosecutions prophesied by Scruggs.  Moreover, judged in relation to the plainly legitimate sweep of § 1346, any de minimis chilling effect that might occur will hardly be substantial.  Scruggs's overbreadth argument fails.

## III.  Conclusion

For the foregoing reasons, the district court's denial of Scruggs's § 2255 motion is AFFIRMED.  We REMAND to the district court for further proceedings consistent with this opinion.

---

[60] 130 S. Ct. at 2933.