# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 13, 2014

No. 11-20516

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

GILBERT BARRY ISGAR; VINCENT WALLACE ALDRIDGE; TORI ELYSE ALDRIDGE,

Defendants–Appellants.

Appeals from the United States District Court
for the Southern District of Texas

Before OWEN and HAYNES, Circuit Judges, and LEMELLE,[*] District Judge.

PRISCILLA R. OWEN, Circuit Judge:

This case arises from a mortgage fraud scheme. At the conclusion of a jury trial, Vincent Wallace Aldridge and Tori Elyse Aldridge (the Aldridges), and Gilbert Barry Isgar (collectively, Defendants) were convicted of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349, aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 2 and 1343, conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h), and aiding and abetting money laundering under 18 U.S.C. §§ 2 and 1957. The Defendants appeal their convictions. We affirm.

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

No. 11-20516

## I

The Defendants' convictions arose out of the sale of nine newly constructed town homes in the Memorial Park area of Houston, Texas. The properties at issue were in a development called "Maxie Village" and were built by Waterford Custom Homes. Isgar owned 50% of Waterford.

The closings were conducted by the First Southwestern Title Company (FSW), which was operated by the Aldridges and for whom Vincent Aldridge was also a fee attorney doing business as Aldridge & Associates. The Aldridges were both authorized signers on Aldridge & Associates' Interest Only Lawyers Trust Account (IOLTA).

The Aldridges recruited three "straw purchasers" to buy eight of the townhomes. Vincent Aldridge purchased the ninth. The straw purchasers were individuals who wanted to invest in real estate and were told that they would receive $10,000 for each property they purchased; that they would not have to pay the mortgages because tenants would be found to lease the properties; and that after approximately one year, the residences would be resold and the straw purchasers might receive additional money at that time. These straw purchasers provided the Aldridges with their respective names, social security numbers, and income information. The Aldridges then used the accurate names and social security numbers, combined with falsified information about income, assets, and intent to use the property as a primary residence, to submit fraudulent loan applications to lenders. The false representations that each purchaser would be residing in the home purchased permitted the Aldridges to obtain 100% financing.

Isgar inflated the sale price of the properties through falsified construction invoices and amendments to the sales contracts. The lenders approved loans to purchase the properties at these inflated practices. When the lenders wired the loan amounts to FSW, disbursements were made to Isgar as payment for the

2

properties. However, other disbursements were made to Aldridge & Associates' IOLTA as well as to Superb Construction that were not disclosed on the settlement statement to the lenders, as required by the Department of Housing and Urban Development (HUD).

The United States mail, including interstate commercial carriers, and wire communications were used to execute this scheme. Loan documents traveled across state lines by facsimile, mail and email. Loan proceeds were wire transferred from the lenders' banks to FSW.

Also involved in the scheme were Alvin Eiland, a mortgage broker, and his employee, Gary Robinson. Robinson assisted Vincent Aldridge in forming Superb Construction, which laundered proceeds from these transactions. Both Eiland and Robinson have pled guilty to conspiracy to commit wire fraud and money laundering and are not parties to this appeal.

A federal grand jury returned a 19-count indictment charging the Aldridges with conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1349 (Count 1), aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 2, 1343 (Counts 2-12), conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h) (Count 13), and aiding and abetting money laundering, in violation of 18 U.S.C. §§ 2, 1957 (Counts 14-19). Isgar was named only in Counts 1-13. A jury returned a guilty verdict as to all three defendants on all counts.

The Defendants appeal their convictions on multiple grounds. Each asserts that the evidence is insufficient to support a conviction. The Aldridges challenge subject matter jurisdiction and venue. They further contend that they are entitled to a new trial because certain FSW documents should not have been admitted, there was prosecutorial misconduct, and that the cumulative errors

No. 11-20516

denied them a fair trial.[1]  Tori Aldridge contends that her indictment was constructively amended, and that the district court erred in the denying her motion for new trial and request for an evidentiary hearing.  She also claims ineffective assistance of counsel.  Vincent Aldridge appeals his sentence and the amount of restitution owed.

## II

Each of the Defendants has challenged the sufficiency of the evidence. "Our review of the sufficiency of the evidence is highly deferential to the verdict."[2]  "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]  "[A]ll reasonable inferences and credibility choices [are] made in support of a conviction."[4]  "Our review is thus limited to whether the jury's verdict was reasonable, not whether we believe it to be correct."[5]  "Finally, '[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt,' and any conflict in the evidence must be resolved in favor of the jury's verdict."[6]

---

[1] On December 3, 2012, Vincent filed a motion in this court seeking to adopt Tori's brief. On December 18, 2012, Tori filed a letter seeking to adopt Vincent's brief.  Under Federal Rule of Appellate Procedure 28(I), a defendant may adopt another's arguments "only" if those claims are not fact specific.  *United States v. Cantu-Ramirez*, 669 F.3d 619, 632 n.4 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 247 (2012).  Accordingly, we treat all arguments raised by Tori and Vincent that do not concern the particular facts of their cases as joint arguments.

[2] *United States v. Moreno-Gonzalez*, 662 F.3d 369, 372 (5th Cir. 2011) (internal quotation marks omitted).

[3] *Id.* (alteration omitted).

[4] *United States v. Asibor*, 109 F.3d 1023, 1030 (5th Cir. 1997).

[5] *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001).

[6] *Moreno-Gonzalez*, 662 F.3d at 372 (alteration in original) (citation omitted) (quoting *United States v. Lage*, 183 F.3d 374, 382 (5th Cir. 1999)).

No. 11-20516

**A**

Tori Aldridge argues that there was insufficient evidence that a prior conspiracy between her and Eiland or her and Robinson existed and asserts that no reasonable jury could find that a conspiracy existed after March 26, 2005. She contends that in every transaction with Eiland or Robinson, she received only the closing fees disclosed on the HUD form. She points to evidence that she suggests exonerates her. A review of the record, however, reveals ample evidence from which the jury could have reasonably concluded that Tori Aldridge acted with the intent to further the fraudulent scheme.

At trial, Robinson testified that Tori Aldridge prepared the falsified paperwork concerning a straw purchaser's income and intent to use the property as a primary residence. He explained that he received and returned the paperwork to her. One of the straw purchasers, Shawn Stevens, testified that in the documents he signed in purchasing two of the Maxie Village town homes less than one month apart, Tori Aldridge attested that each would be used as his primary residence when in fact, neither would be or actually was used as a residence by him. Tori Aldridge notarized documents that stated Stevens had face-to-face meetings with her when that was false, and she attested that signatures and initials on loan documentation were those of Stevens, though Stevens testified that those signatures and initials were forgeries. One witness stated that Tori Aldridge had expressly directed her to draft a statement lying about her income. Tori Aldridge's signature was on this falsified paperwork. A witness from one of the lenders also verified that Tori Aldridge had signed the closing paperwork, attesting to the accuracy of the information provided therein. There was sufficient evidence from which a jury could conclude that Tori Aldridge was an active participant in the fraudulent scheme.

**B**

Isgar argues that the Government failed to present sufficient evidence that he was a knowing participant in the fraud. He cites *United States v. Curtis*[7] for the proposition that the Government was required to present proof that the actual sale prices of the properties were inflated in the form of either an appraisal report or appraiser testimony and contends that in the absence of such proof, this court must reverse. Isgar also contends that his own damaging statement that the values of these properties were slightly inflated is insufficient to meet the Government's burden.

Isgar is mistaken that *Curtis* requires proof of an appraisal to support a conviction for conspiracy to commit mail and wire fraud.[8] In fact, in *Curtis*, we emphasized that "circumstantial evidence may establish the existence of a conspiracy, as well as an individual's voluntary participation in it."[9] We also noted that a "defendant's knowing and voluntary participation in the conspiracy can even be established solely on the basis of the testimony of a coconspirator . . . so long as that testimony is not incredible as a matter of law."[10]

Here, there was circumstantial evidence supporting Isgar's knowing participation in the fraud. Robinson testified that Isgar's role in the scheme required that Isgar "be okay with inflating the price." FBI Agent Robert McCallum also testified that Isgar handled the day-to-day business affairs of

---

[7] 635 F.3d 704 (5th Cir. 2011).

[8] *Curtis*, 635 F.3d at 718 ("The Government was not specifically obligated to prove that the values stated in the appraisal reports were falsified or inflated. Rather, it had to prove that Curtis made some kind of a false or fraudulent material misrepresentation in service of a scheme to defraud."). An overt act was required in *Curtis* because the Government charged the defendant with conspiracy under 18 U.S.C. § 371. Our discussion, then, was focused on the overt act, not on the appraisal itself.

[9] *Id.* at 719 (alteration omitted).

[10] *Id.* (alteration in original) (internal quotation marks omitted).

Waterford and that Isgar had signed the disbursements to the Aldridge's IOLTA and to Superb Construction. Isgar's own statements support the inference that he was a knowing participant. Isgar explained to Agent McCallum that "the sales prices of the properties had been raised" and supported in the documentation with construction repair invoices or amendments added to the sales contracts giving the purchaser a $60,000 allowance to pay the contractor of the purchaser's choice to make repairs. There was evidence that $60,000 in construction repairs or upgrades to the Maxie Village newly constructed town homes was unnecessary.

Isgar admitted to FBI agents that with regard to the town home Isgar sold to Vincent Aldridge, Isgar made a disbursement to Aldridge the day after the sale closed, and Isgar said that he knew that he should not have done so. Isgar also participated in disbursements to Superb Construction Company, the entity formed by Vincent Aldridge but opened under Robinson's name. No legitimate purpose for the disbursements to Superb Construction Company was evident.

Isgar was also a licensed real estate agent. Though he knew that the value of the units was inflated, he always received his full asking price and no negotiation with buyers was necessary. His company, Waterford, made approximately $30,000 to $60,000 in profit on each sale.

Isgar's contention that this statement was insufficient to demonstrate his knowing participation goes to the weight of the evidence, and "[t]he jury retains the sole authority to weigh any conflicting evidence."[11] The jury here could have reasonably concluded from Isgar's acknowledgment of the inflated prices as well as from the other circumstantial evidence that Isgar knowingly participated in the scheme.

---

[11] *United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012) (internal quotation marks omitted)).

No. 11-20516

C

Vincent Aldridge challenges the sufficiency of the evidence underlying his convictions for conspiracy to commit money laundering under 18 U.S.C. §§ 1956(h) and 1957. The jury was instructed that the transfers of money from FSW to the Aldridges's IOLTA account had to involve "proceeds" of an unlawful activity, and the district court instructed the jury that "proceeds" was limited to the "profits," not "gross receipts," of unlawful activity. Aldridge argues that the money deposited in the IOLTA account was used to pay two of the straw purchasers and to make mortgage payments on the town homes and that accordingly, the funds were used to further the conspiracy and were not profits retained by him.

Vincent Aldridge relies on *United States v. Santos*.[12] In *Santos*, a plurality of the Supreme Court held that the term "proceeds" under § 1956 meant "profits" rather than "gross receipts," at least in part to prevent merger issues.[13] "The concept of merger is implicated when a defendant is convicted under two criminal statutes for what is actually a single crime; that is, convicted under the money laundering statute for essentially the same conduct that constitutes the conduct of the 'unlawful activity' upon which the money laundering count is premised."[14] Thus, Vincent argues, just as *Santos* held that the funds from which the costs of the illegal scheme itself must be paid are not "profits," the evidence in the instant case of funds transferred from FSW into his IOLTA likewise do not represent "profits" because this money was used to pay the expenses incurred in executing the wire fraud scheme.

---

[12] 553 U.S. 507 (2008).

[13] *Santos*, 553 U.S. at 515.

[14] *United States v. Kennedy*, 707 F.3d 558, 563 (5th Cir. 2013).

8

We rejected this argument in *United States v. Kennedy*.[15]   There, we addressed a similar mortgage fraud scheme and held that the subsequent disbursements of mortgage loan funds from the title company to the defendants' various shell companies constituted different conduct underlying a different crime.[16]   We reasoned that wire fraud was completed when the lender transmitted funds and that subsequent expenditures to make down payments on newly acquired mortgages and to make bonus payments to borrowers to encourage them to invest again were the use of profits to assist the defendants in committing new crimes of wire fraud.[17]   We concluded that payments of this nature "could not be anything but [the use of] profits."[18]

In the present case, the Government presented evidence that Isgar inflated the sales prices of the properties through fraudulent construction invoices and amendments to the sales contracts such that the subsequent disbursement of the amounts in excess of the actual price constituted only profits.  Second, the Government also demonstrated that the $10,000 payments to straw purchasers were given at least in part to encourage them to invest again, and that the disbursements to both the Aldridges's IOLTA and Superb Construction were unsupported by consideration but were instead direct payments of profits from the fraudulent scheme.  Accordingly, just as in *Kennedy*, there was sufficient evidence from which a jury could have reasonably found that the transferred funds were profits, and thereby formed the basis for Vincent Aldridge's money laundering convictions.

---

[15] 707 F.3d 558 (5th Cir. 2013).

[16] *See Kennedy*, 707 F.3d at 560-62, 566-67.

[17] *Id*. at 566-67.

[18] *Id*. at 567.

No. 11-20516

## III

### A

Tori Aldridge contends that the district court lacked subject matter jurisdiction over the wire fraud counts. She argues that, because state law required the wire transmissions at issue in this case, the transmissions could not have been unlawful. She asserts, "federal jurisdiction is improper as a matter of law." We disagree.

Our review of subject matter jurisdiction is de novo.[19] "Subject matter jurisdiction . . . is straightforward in the criminal context."[20] Under 18 U.S.C. § 3231, "[t]he district courts of the United States have original jurisdiction . . . of all offenses against the laws of the United States."[21] To invoke this jurisdictional grant, "an indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute."[22] Defects in the indictment, moreover, such as insufficient factual allegations, do not deprive the court of jurisdiction.[23] As the Supreme Court has clarified, "a district court has jurisdiction of all crimes cognizable under the authority of the United States and the objection that the indictment does not charge a crime against the United States goes only to the merits of the case."[24] The counts in the indictment against Tori Aldridge closely track the

---

[19] *United States v. Hazlewood*, 526 F.3d 862, 864 (5th Cir. 2008).

[20] *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013).

[21] 18 U.S.C. § 3231.

[22] *Scruggs*, 714 F.3d at 262 (internal quotation marks and citations omitted).

[23] *See id.* at 263 ("Even though a [subsequent Supreme Court case] might have rendered the instant information *factually* insufficient, it did not divest the district court of subject matter jurisdiction over the case." (emphasis in original, internal quotation marks omitted)); *United States v. Scruggs*, 691 F.3d 660, 668-69 (5th Cir. 2012) (reaching a similar conclusion).

[24] *United States v. Cotton*, 535 U.S. 625, 630-31 (2002).

language of the corresponding statutes. The district court possessed subject matter jurisdiction.[25]

Tori Aldridge also contends that venue was improper in the Southern District of Texas for the wire fraud charges. However, she has waived any objection to venue. Although a defendant may challenge venue in a motion for judgment for acquittal pursuant to Federal Rule of Criminal Procedure 29,[26] the Aldridges' motion failed to raise any venue issue. Therefore, this issue was not properly preserved for appellate review.[27]

**B**

Each of the Aldridges asserts that the district court abused its discretion in admitting FSW documents concerning the real estate transactions at issue.[28] The Aldridges maintain that these documents were not admissible under the business records exception, which permits "the admission of 'records of regularly conducted activity'" so long as certain conditions are met,[29] because the witness offering the records had never been employed at FSW and could not testify as to its business practices.

The witness presenting the foundation for the admission of a record need

---

[25] *See Scruggs*, 691 F.3d at 668 (holding that there was no jurisdictional defect when the language of the charging document "track[ed] the statutory language" even though "the facts proffered at the plea hearing [were] insufficient to establish that" the defendant committed the crime).

[26] *United States v. Carreon-Palacio*, 267 F.3d 381, 392-93 (5th Cir. 2001).

[27] *Carreon-Palacio*, 267 F.3d at 392-93 ("In situations where adequate allegations are made but the impropriety of venue only becomes apparent at the close of the government's case, a defendant may address the error by objecting at that time, and thus preserve the issue for appellate review.").

[28] *See, e.g.*, *United States v. Hale*, 685 F.3d 522, 538 (5th Cir. 2012) (per curiam), *cert. denied*, 133 S. Ct. 559 (2012) ("We review evidentiary rulings regarding the admission of evidence only for an abuse of discretion." (internal quotation marks omitted)).

[29] *United States v. Ned*, 637 F.3d 562, 569 (5th Cir. 2011) (per curiam) (alteration in original) (quoting FED. R. EVID. 803(6)).

not be the "author of the record or be able to personally attest to its accuracy."[30] Instead, because this exception hinges on the "trustworthiness of the records," a court does not abuse its discretion by admitting documents from a custodian that never worked for the employer that created the documents if that custodian explains "how she came to possess them and how they were maintained."[31] Here, the witness testified, based on an affidavit from a Commonwealth Land Title Insurance employee, that when FSW ceased to exist, Commonwealth, with which FSW had previously had a title insurance agreement, filed suit and obtained entry. Commonwealth took possession of all of FSW's guaranty files, including those at issue in this appeal. Commonwealth maintained the files and did not remove any documents. The Commonwealth employee's affidavit stated that FSW's files appeared to contain the type of records usually found in guaranty files that a title company maintains in the ordinary course of business. The trial witness's employer, Fidelity National Title Group, acquired Commonwealth and immediately placed FSW's files in storage. Based on this court's precedent, the district court had sufficient evidence of trustworthiness to admit FSW's documents on this basis. In any event, the admission of the FSW files was harmless error in light of the other evidence in the record of the fraud. We therefore do not reach Vincent Aldridge's arguments regarding the district court's alternative conclusion that admission of the FSW documents was permissible under the residual hearsay exception.

## C

Tori Aldridge argues that the prosecutor engaged in misconduct that requires reversal but recognizes that because there was no contemporaneous

---

[30] *Id.* at 570.

[31] *E.g.*, *United States v. Morrow*, 177 F.3d 272, 295 (5th Cir. 1999) (per curiam).

objection at trial, our review is for plain error.[32]  Aldridge must show an error, that was plain, and that affected her substantial rights, *i.e.*, "affected the outcome of the district court proceedings."[33]  She asserts that the prosecutor intentionally used a "dormant" guaranty file that pertained to matters outside the statute of limitations.  This resulted, Aldridge asserts, in (1) allowing the indictment of an otherwise unindictable case, (2) creating a prior conspiracy in order to manufacture her recruitment of the builder, (3) sponsoring perjury known to the prosecution team, (4) creating false unity of purpose by its introduction of false evidence and testimony that Tori Aldridge received money when the evidence was to the contrary, and (5) a conviction based on false information.

The documents at issue were used by the prosecution in connection with evidence of the purchase of town homes by Shawn Stevens, one of the straw purchasers.  Tori Aldridge also contends that the prosecutor failed to correct Stevens's misstatement on direct examination as to the amount of money disbursed to Tori Aldridge in connection with Stevens's purchase of these properties, and contends that the prosecutor "doubled down on the uncorrected, false testimony."  When asked by the district court as to the accuracy of Stevens's statements about proceeds disbursements, the prosecutor said, "I think it is [accurate], Your Honor.  I will double check on that for you."

We hold there is no plain error.  First, with regard to the documents at issue, there was considerable evidence regarding a conspiracy in which Tori Aldridge participated, including testimony from Stevens in which he confirmed that he was a purchaser of properties in Maxie Village and the facts surrounding his involvement.  We are not persuaded that there is a reasonable probability

---

[32] *United States v. Gracia*, 522 F.3d 597, 599-600 (5th Cir. 2008).

[33] *Puckett v. United States*, 556 U.S. 129, 135 (2009).

that the jury would have failed to convict Tori Aldridge had the government not used the documents at issue.[34]   Second, Stevens's misstatement regarding disbursements of loan proceeds merely transposed the disbursement of proceeds from two different properties, and the disbursement worksheet noting the correct amounts was admitted into evidence.  Even assuming that the first two elements of plain error review are met, Tori Aldridge cannot meet her burden of showing that the error affected the outcome of the trial.  Lastly, the prosecutor's comment to the trial judge regarding the accuracy of Stevens's testimony does not constitute a false, material statement such that an error, let alone a plain error, occurred.[35]

## D

Tori Aldridge asserts that the district court erred by constructively amending her indictment.  Because she failed to contemporaneously object to the alleged constructive amendment of her indictment, we review her objection for plain error.[36]  "The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment."[37]   "A jury instruction constructively amends an indictment if it permits the jury to convict the defendant upon a factual basis that effectively modifies an essential element of the crime charged."[38]

Specifically, Aldridge alleges that the district court impermissibly allowed

---

[34] *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (defining materiality in terms of a "reasonable probability" of a different outcome).

[35] *See Tassin v. Cain*, 517 F.3d 770, 777-78 (5th Cir. 2008) (measuring prosecutorial misconduct according to "the extent to which the testimony misled the jury" (citing *Napue v. Illinois*, 360 U.S. 264, 270 (1959))).

[36]  *United States v. Bohuchot*, 625 F.3d 892, 896-97 (5th Cir. 2010).

[37] *United States v. Dixon*, 273 F.3d 636, 639 (5th Cir. 2001).

[38] *Id.* (internal quotation marks omitted).

evidence of her role as a broker and of her fiduciary duties to support an alternative theory of honest services under § 1346 rather than the indicted charges of conspiracy to commit mail and wire fraud under §§ 1341, 1343, and 1349. However, the district court specifically instructed the jury that any violation of fiduciary duties or regulations was not to be considered a violation of criminal law and charged the jury to consider such facts only "in determining whether the defendants had the required intent to violate the criminal law as charged in the indictment."[39] Accordingly, we find no error, plain or otherwise.

## E

We reject Tori Aldridge's assertion that the district court abused its discretion by denying her motion for new trial and request for an evidentiary hearing.[40] Because her motion was not based on newly discovered evidence, Aldridge had to file her motion within 14 days after the jury reached its verdict.[41] However, she filed her motion on October 28, 2011—over nine months after the jury reached a verdict. Because Aldridge does not argue that her failure to act stemmed from excusable neglect,[42] the district court did not abuse its discretion in finding that her motion was untimely.[43]

## F

We do not consider the merits of Tori's ineffective assistance of counsel claim. "Sixth Amendment claims of ineffective assistance of counsel should not

[39] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").

[40] *See, e.g.*, *United States v. Munoz*, 150 F.3d 401, 413 (5th Cir. 1998) ("We review the denial of a motion for new trial for abuse of discretion.").

[41] FED. R. CRIM. P. 33(b).

[42] FED. R. CRIM. P. 45(b)(1)(B).

[43] *See, e.g.*, *Dotson v. Clark Equip. Co.*, 805 F.2d 1225, 1229 (5th Cir. 1986) ("[T]he district court did not abuse its discretion in refusing to consider [the appellant's] untimely supplement to the original new trial motion . . . .").

15

be litigated on direct appeal, unless they were previously presented to the trial court."[44] It is only in "rare cases in which the record allows a reviewing court to fairly evaluate the merits of the claim" that we will consider such a claim.[45] Such is not the case here. Although Tori Aldridge's current counsel argued below that trial counsel was ineffective, he did not seek a hearing on that basis. Accordingly, the record is undeveloped as to trial counsel's "conduct and motivations."[46] We therefore deny this claim without prejudice to collateral review.[47]

## G

Tori Aldridge argues that cumulative error denied her a fair trial. She cites to all the alleged errors discussed above to support this theory, as well as to her arguments concerning the sufficiency of the evidence. "The cumulative error doctrine provides for reversal when an aggregation of non-reversible errors, *i.e.*, plain and harmless errors that do not individually warrant reversal, cumulatively deny a defendant's constitutional right to a fair trial."[48] This doctrine is only to be used in "rare instances," and "[r]eversal is justified 'only when errors so fatally infect the trial that they violated the trial's fundamental fairness.'"[49] As discussed above, none of Tori Aldridge's allegations amount to error. Accordingly, there is no justification for reversal under the cumulative

---

[44] *United States v. Aguilar*, 503 F.3d 431, 436 (5th Cir. 2007) (per curiam).

[45] *Id.* (internal quotation marks omitted).

[46] *See id.* (denying ineffective assistance of counsel claim without prejudice because the district court had not held a hearing and the record did "not provide sufficient detail about trial counsel's conduct and motivations to allow this court to make a fair evaluation of the merits of [the appellant's] claim").

[47] *See id.* (disposition of ineffective assistance of counsel claim).

[48] *United States v. Cervantes*, 706 F.3d 603, 619 (5th Cir. 2013) (citing *United States v. Delgado*, 672 F.3d 320, 343-44 (5th Cir. 2012) (en banc)).

[49] *Id.* (quoting *Delgado*, 672 F.3d at 344).

error doctrine.[50]

## IV

Vincent Aldridge raises two issues regarding his sentence. He first asserts that 63 months of imprisonment, which was within the properly-calculated Guidelines range of 63 to 78 months, was unreasonable. Because Aldridge failed to object in the district court on this basis, we review for plain error.[51] "A discretionary sentence imposed within a properly calculated guidelines range is presumptively reasonable."[52] "A defendant's disagreement with the propriety of the sentence imposed does not suffice to rebut the presumption of reasonableness that attaches to a within-guidelines sentence."[53] Because Aldridge's claim that the nature and circumstances of his offense warrant a lower sentence under 18 U.S.C. § 3553(a) asserts nothing more than disagreement with his sentence, he fails to show plain error.[54]

Aldridge argues that the district court abused its discretion in calculating the amount of restitution owed pursuant to the Mandatory Victims Restitution Act.[55] A district court may generally "award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly

---

[50] *Id.* ("Allegations of non-errors do not play a role in cumulative error analysis since there is nothing to accumulate.").

[51] *See, e.g.*, *United States v. Ruiz*, 621 F.3d 390, 398 (5th Cir. 2010) (per curiam).

[52] *Id.* at 398; *see also United States v. Gomez-Herrera*, 523 F.3d 554, 565-66 (5th Cir. 2008).

[53] *Ruiz*, 621 F.3d at 398.

[54] *See, e.g.*, *United States v. Rodriguez*, 523 F.3d 519, 526 (5th Cir. 2008) (refusing to disturb presumption of reasonableness that attached to a within-guidelines sentence when district court considered but rejected arguments for a non-guidelines sentence).

[55] *See United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008).

from the offense for which the defendant was convicted."[56] Aldridge specifically challenges the inclusion of $140,000 payable to Mortgage Investment Lending Associates for the transaction involving 5529 Cornish because "there is nothing that indicates that the transaction involved any criminal participation [by Vincent]."  However, Aldridge does not contest that the transaction was illegal or that he participated in the transaction as an FSW employee.  In *United States v. Arledge*,[57] this court held in similar circumstances that when a transaction is shown to be fraudulent and the defendant was involved as the attorney of record, the district court does not abuse its discretion by awarding restitution based on losses resulting from the fraud for which the defendant was convicted.[58]  We therefore hold that the district court did not abuse its discretion in calculating this restitution award.

*     *     *

For the foregoing reasons, we AFFIRM the Defendants' convictions and Vincent Aldridge's sentence in all respects.

---

[56] *Id.* at 898.

[57] 553 F.3d 881 (5th Cir. 2008).

[58] *Arledge*, 553 F.3d at 898.