# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 10, 2021

Lyle W. Cayce
Clerk

No. 20-20491
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

WINFRED FIELDS,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CR-316-1

Before HIGGINBOTHAM, HIGGINSON, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

A jury found Winfred Fields guilty of mail fraud, conspiracy to commit mail fraud and wire fraud, and 13 counts of aiding and assisting in preparation and presentation of false tax returns. He argues on appeal that his attorney labored under several conflicts of interest, that the district court

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-20491

should have rejected his waiver of his right to conflict-free counsel, and that counsel was ineffective in failing to advise him to accept the Government's plea offer.

I.

Winfred Fields was charged with 15 criminal counts related to a scheme to obtain fraudulent income tax refunds for United States residents and nonresident taxpayers. The superseding indictment alleged violations of a treaty or convention between the United States and the United Kingdom (UK) "establish[ing] the taxation rules for residents of one country performing work and receiving pay in the other country to avoid double taxation and the prevention of fiscal tax evasion." The indictment alleged that Fields filed approximately 200 tax returns or amended tax returns seeking a refund by falsely claiming that the withheld earnings paid to the IRS were exempt from taxation pursuant to the tax treaty with the UK.

Before trial, the Government filed a motion asking the district court to inquire into possible conflicts of interest between Fields and one of his defense attorneys, Dwight Jefferson. The motion asserted that in 2010 Jefferson represented Fields in applying for a temporary restraining order (TRO) against a bank after Fields's business account was frozen on suspicion of fraud. The motion also asserted that, after the litigation with bank was resolved, Fields began depositing tax refund checks into Jefferson's attorney trust accounts; Jefferson retained a fee and issued the proceeds to Fields.

The district court granted the Government's motion and conducted two *Garcia* hearings to ensure a valid waiver by the defendant of his constitutional right to conflict-free counsel. *See United States v. Garcia*, 517 F.2d 272, 278 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 & n.2 (1984). In the end, the district court found that Fields had validly waived his right to conflict-free representation.

2

No. 20-20491

The jury found Fields guilty of all 15 counts. He was sentenced within the advisory guidelines range to a total 108 months of imprisonment followed by three years of supervised release, and he was ordered to pay more than $3 million in restitution.

## II.

Under the Sixth Amendment, a defendant's right to counsel requires that counsel be free of a conflict of interest. *United States v. Brown*, 553 F.3d 768, 799 (5th Cir. 2008). A defendant may choose to proceed with counsel who has a conflict if the defendant validly waives his constitutional right to conflict-free representation following a *Garcia* hearing. *Id.* To be valid, a waiver must be knowing, voluntary, and intelligent. *United States v. Greig*, 967 F.2d 1018, 1021 (5th Cir. 1992). At the *Garcia* hearing, the district court must "ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." *Greig*, 967 F.2d at 1022. Even so, some conflicts are so severe as to deprive a defendant of the right to effective assistance of counsel and therefore cannot be waived. *See United States v. Vaquero*, 997 F.2d 78, 90 (5th Cir. 1993). "We review the district court's acceptance of defendant's waiver of conflict-free counsel for simple error." *United States v. Moore,* 37 F.3d 169, 174 (5th Cir.1994).

Fields validly waived any potential conflict. The district court here held two *Garcia* hearings, four weeks apart, addressing the potential conflicts of interest. At the hearings, the district court extensively discussed the potential conflicts that could arise at trial, including the possibility that Fields would want to raise a reliance on advice of counsel defense, the potential that Jefferson's advice would be colored by concern for his own reputation, and the fact that Jefferson's representation of Fields would prevent him from

No. 20-20491

testifying to explain his apparent involvement in the fraud and the use of his IOLTA. The district court admonished Fields about his right not to testify and that if he decided not to testify, there would be no testimony explaining the deposits of client tax refund checks into Jefferson's IOLTA.

At the second *Garcia* hearing, the district court reiterated that counsel without potential conflicts provided the best chance of prevailing. The district court advised Fields that he was facing 70 years in prison and that the court could not anticipate all potential conflicts, and Fields told the court that he understood. Thus, the district court ensured that Fields was aware of potential conflicts and "the potential hazards to his defense by continuing with" possibly conflicted counsel. *See Greig*, 967 F.2d at 1022.

At the close of the initial hearing, the district court adjourned for four weeks to allow Fields to discuss the potential conflicts with his three defense attorneys and to make arrangements for retaining new counsel if appropriate. At the later hearing, the district court ensured that Fields had conversations, outside Jefferson's presence, with his other two defense attorneys and confirmed that they were independent of Jefferson. The district court told Fields that the court would appoint counsel if Fields satisfied the criteria for appointed counsel. Fields acknowledged that he had discussed the issue with his other two other defense attorneys and his family and that he had an opportunity to obtain independent advice and did not wish to seek the advice of other counsel. Thus, the district court ensured that Fields was aware of his right to obtain other counsel. *See Greig*, 967 F.2d at 1022.

The record shows that district court substantially complied with *Garcia* by holding two hearings advising Fields of his right to waive the conflict, the dangers involved in making such a waiver, and his right to obtain new counsel. *See Greig*, 967 F.2d at 1022. Fields has not shown that his waiver was involuntary or unknowing. *Garcia*, 517 F.2d at 276.

No. 20-20491

Even so, the determination that Fields validly waived his right to conflict-free counsel does not end our inquiry. "An accused's right to waive conflict-free representation is not absolute. If the conflict is so severe as to render a trial inherently unfair, then the integrity of the judicial system has been undermined, and the accused has been deprived of his right to effective counsel." *Vaquero*, 997 F.2d at 90. "'We determine whether the integrity of the judicial system has been undermined by reference to the current national standards of legal ethics,' although such standards are not controlling." *United States v. Rico*, 51 F.3d 495, 511 (5th Cir. 1995) (quoting *Vaquero*, 997 F.2d at 90-91). The ABA Model Rules of Professional Conduct prohibit a lawyer from representing a client when there is a significant risk that the lawyer's representation will be materially limited by the lawyer's personal interest, unless the lawyer reasonably believes that he can competently and diligently represent the client; the representation is not illegal; and the client gives informed, written consent. MODEL RULES OF PRO. CONDUCT r. 1.7 (AM. BAR ASS'N 2021); *see* TEX. DISCIPLINARY RULES OF PRO. CONDUCT r. 1.06(b)-(c).

Fields has not shown that Jefferson's belief that the potential conflicts would not affect his representation of Fields was unreasonable. *See Rico*, 51 F.3d at 511. Jefferson maintained that his testimony was unnecessary to explain the use of his IOLTA or inconsistencies between Fields's representations to the IRS and his verified pleading in the TRO litigation. Jefferson also explained that Fields would be raising the defense of reliance on the advice of the IRS, rather than advice of counsel and nothing in the record indicates that the defense of reliance on the advice of counsel should have been raised at trial. In addition, the Government explained that it had no reason to believe Jefferson knowingly participated in the fraud, and Fields's other two attorneys, who were independent of Jefferson, agreed that the conflict was waivable.

Thus, Fields has not shown that any conflict was sufficient to impugn the judicial system or render Fields's trial inherently unfair, such that his right to conflict-free counsel was unwaivable. *Vaquero*, 997 F.2d at 90.

### III.

The record is not sufficiently developed to allow fair consideration of Fields's claim that counsel was ineffective in failing to advise him to accept the Government's plea deal, and, therefore, we decline to consider it without prejudice to any right that Fields has to assert it on collateral review. *See United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014). Finally, Fields asks us to exercise our supervisory power to reverse his conviction. "The underlying purpose of [our] inherent supervisory powers are to 1) implement a remedy for a violation of a recognized right, 2) to preserve judicial integrity by insuring that the conviction rests on appropriate consideration validly before the jury and 3) as a remedy designed to deter further illegal conduct." *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1349 (5th Cir. 1994). Fields has not demonstrated that any of these purposes would be accomplished by using our supervisory power to reverse his conviction. Thus, we decline to do so.

For the foregoing reasons, the district court's judgment is AFFIRMED.